UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL HYDROPOWER ASSOCIATION, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. FISH AND WILDLIFE SERVICE, *et al.*,<br><br>*Defendants*. | Civil Action No. 24-2285 (SLS)<br><br>Judge Sparkle L. Sooknanan |

**MEMORANDUM OPINION**

This case involves 2024 regulatory revisions permitting the U.S. Fish and Wildlife Service (FWS) and the National Marine Fisheries Service (NMFS) to impose offsets as reasonable and prudent measures for Section 7 consultations under the Endangered Species Act (ESA). The Plaintiffs are nonprofit groups that represent hydropower industry companies and advocate on behalf of the hydropower industry. They filed this lawsuit seeking relief from the 2024 regulations. But in January 2025, President Trump directed the agencies to review and reconsider the challenged regulations, and the Defendants have since started a process to do so. They accordingly moved for voluntary remand or for the Court to hold the case in abeyance pending the anticipated rulemaking. They have represented to the Court that they are "extremely unlikely" to apply the challenged regulations to the Plaintiffs. The Court will hold the case in abeyance pending the rulemaking in the interest of judicial economy given the lack of evidence that the Plaintiffs will suffer significant and immediate hardship during a stay. Should new facts emerge that suggest that the challenged regulations will be applied to the Plaintiffs, they may return to this Court seeking to vacate the stay and obtain expedited relief.

## BACKGROUND

"Section 7 of the ESA prescribes the steps that federal agencies must take to ensure that their actions do not jeopardize endangered wildlife and flora." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 652 (2007). More specifically, Section 7(a)(2) provides that "[e]ach Federal agency shall, in consultation with and with the assistance of [the FWS or the NMFS], insure that any action authorized, funded, or carried out by such an agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species." 16 U.S.C. § 1536(a)(2). At the conclusion of consultation, the Services "shall provide to the Federal agency and the applicant, if any, a written statement setting forth the [Service's] opinion, and a summary of the information on which the opinion is based, detailing how the agency action affects the species or its critical habitat." *Id.* § 1536(b)(3)(A).

According to the statute, when an agency action might cause the take of a listed species, the Services "shall provide" an incidental take statement that "specifies the impact of such incidental taking on the species, . . . specifies those reasonable and prudent measures that the [Service] considers necessary or appropriate to minimize such impacts, . . . and . . . sets forth the terms and conditions . . . that must be complied with by the Federal agency or applicant (if any), or both[.]" *Id.* § 1536(b)(4)(C). And historically, the Services' regulations defined reasonable and prudent measures as those actions deemed "necessary or appropriate to minimize the impacts, *i.e.*, amount or extent, of incidental take. 50 C.F.R. § 402.02 (1986). But new regulations became effective on May 6, 2024, which redefined "reasonable and prudent measures" as those actions considered "necessary or appropriate to minimize the impact of the incidental take on species." 50 C.F.R. § 402.02. And those regulatory revisions provided that reasonable and prudent measures may include "measures implemented inside or outside of the action area that avoid, reduce, or

*offset the impact of incidental take.*" 50 C.F.R. § 402.14(i)(2) (2024) (emphasis added). This inclusion of offsets marked "a change in the Services' practice." Compl. ¶ 48, ECF No. 1 (quoting Section 7 Final Rule at 24,269).

The Plaintiffs in this case are two nonprofit associations dedicated to the development of hydropower in the United States. *Id.* ¶¶ 7–8. Many of their members hold licenses issued by the Federal Energy Regulatory Commission (FERC) to "construct and operate hydropower facilities." *Id.* ¶ 10. And FERC must consult with the Services under Section 7 of the ESA before issuing any new licenses or license amendments that "may affect" ESA-listed species or their critical habitats. *Id.* ¶ 11. The Plaintiffs claim that their members "account for a large percentage of the hydropower licensing proceedings currently before FERC, all of which will require compliance with ESA Section 7." *Id.* This means that if incidental take may occur, the Services will provide an incidental take statement with reasonable and prudent measures that must be followed for FERC to avoid liability under the ESA. *Id.* ¶ 12. Accordingly, FERC treats any reasonable and prudent measures as "mandatory conditions and incorporates them into their licenses." *Id.* The Plaintiffs are therefore "subject to conditions and limitations placed in incidental take statements," including reasonable and prudent measures, "at the conclusion of FERC's Section 7 consultation(s) with the Service(s)." *Id.*

The Plaintiffs believe that the regulatory revisions allowing reasonable and prudent measures to include offsets are unlawful. They filed a Complaint in this Court on August 2, 2024, naming the FWS, the U.S. Secretary of the Interior, the NMFS, and the U.S. Secretary of Commerce as the Defendants. *See id.* ¶¶ 16–19. The Plaintiffs raise three claims: (1) that the revisions are inconsistent with the text of the ESA and are therefore "in excess of the Services' statutory authority," in violation of 5 U.S.C. § 706(2)(A), (C), *id.* ¶¶ 63–68; (2) that the revisions

3

are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of 5 U.S.C. § 706(2)(A)," *id.* ¶¶ 69–71; and (3) that the revisions were promulgated "without observance of procedure required by law," in violation of 5 U.S.C. § 706(2)(D), because, "among other things," they "fail[ed] to consider and respond to significant points" raised in the Plaintiffs' comments from the rulemaking process, *id.* ¶¶ 72–74.

And it appears that the Defendants may well agree. Citing recent Executive Orders and *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), they state that "[t]he Services intend to submit to the Federal Register proposed rules to revise or rescind the ESA regulations, which includes the challenged 2024 regulation, by October 31, 2025." Mot. Voluntary Remand at 8, ECF No. 19. "And they intend to complete the rulemaking and submit the final rules to the Federal Register by October 31, 2026." *Id.* Accordingly, the Defendants moved for voluntary remand without vacatur, *id.* at 1, or, in the alternative, for the Court to "hold the case in abeyance pending either application of the regulation to [the] Plaintiffs or completion of the anticipated rulemaking," *id.* at 14. The Plaintiffs opposed both vacatur and a stay. *See* Pls.' Opp'n, ECF No. 23. And the Defendants have since "withdraw[n] their request for a remand and now seek only a stay." Defs.' Reply at 1, ECF No. 25.

**LEGAL STANDARD**

And order granting a motion to hold a case in abeyance "stays all proceedings" until the Court directs otherwise. *Basardh v. Gates*, 545 F.3d 1068, 1069 (D.C. Cir. 2008). And a district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Whether to hold a case in abeyance is therefore a matter of discretion, and courts must balance the interest in judicial economy against any potential prejudice to the parties. *See Landis*, 299 U.S. at 254–55; *see also Hulley Enters. Ltd. v. Russian Fed'n*, 211 F. Supp. 3d

269, 280 (D.D.C. 2016) (saying that before courts exercise their inherent power to "control the disposition of the cases on its docket with economy of time and effort," they "must weigh competing interests and maintain an even balance between them, taking into consideration the benefits of a stay, the hardship to the movant of denying a stay, and any injury to the nonmovant from issuing a stay" (cleaned up)). "In choosing 'how to manage their dockets . . . the decision to grant a stay . . . is generally left to the sound discretion of district courts.'" *Hulley Enters. Ltd.*, 211 F. Supp. 3d at 276 (quoting *Ryan v. Gonzales*, 568 U.S. 57 (2013) (cleaned up)).

## DISCUSSION

The Defendants seek a stay of all proceedings in this case pending their anticipated rulemaking. In the interest of judicial economy, and because the Court is not convinced that the Plaintiffs are likely to suffer immediate and significant hardship during such a stay, the Court exercises its discretion to hold the case in abeyance pending the rulemaking. But the Plaintiffs may return to this Court to seek vacatur of the stay and expedited relief should new facts suggest that the regulations will be applied to them.

A. **Judicial Economy**

There is a "power inherent in every court to control the disposition of the cases on its docket with economy of time and effort." *Hulley Enters. Ltd.*, 211 F. Supp. 3d at 280 (quoting *Landis*, 299 U.S. at 254). "It is a cardinal virtue of Article III courts to avoid unnecessary decisions and to promote voluntary resolutions where appropriate." *Ctr. for Biological Diversity v. EPA*, 56 F.4th 55, 71 (D.C. Cir. 2022). "Postponing review can also conserve judicial resources, and it comports with our theoretical role as the governmental branch of last resort." *Am. Petrol. Inst. v. EPA*, 683 F.3d 382, 386–87 (D.C. Cir. 2012) (cleaned up). Courts have therefore held cases in abeyance while agencies have reconsidered challenged rules. *See, e.g.*, *Utah v. EPA*, No. 23-1157, 2025 WL 1354371, at *1 (D.C. Cir. May 2, 2025) (per curiam); *Sierra Club v. EPA*, 551 F.3d 1019, 1023

5

(D.C. Cir. 2008) ("EPA agreed to take comment on the new SSM provisions, and the consolidated cases were held in abeyance pending reconsideration.").

Judicial economy favors holding this case in abeyance. At the direction of the President, "[t]he Services are reconsidering the ESA regulations through rulemaking." Mot. Voluntary Remand at 8. And they have even provided a timeline. They "intend to submit to the Federal Register proposed rules to revise or rescind the ESA regulations, which include[] the challenged 2024 regulation, by October 31, 2025." *Id.* "And they intend to complete the rulemaking and [to] submit the final rules to the Federal Register by October 31, 2026." *Id.* This may well amount to "a complete reversal of course . . . that, if adopted, would necessitate substantively different legal analysis and would likely moot the analysis we could undertake if deciding the case now." *Am. Petrol. Inst.*, 683 F.3d at 388–89. Allowing the Services to reconsider the challenged revisions might therefore obviate the need for judicial review and preserve judicial resources in the process.

B.     **Prejudice to Parties**

Judicial economy must also be weighed against potential prejudice to the parties. *See Landis*, 299 U.S. at 258–59 ("Benefit and hardship will be set off, the one against the other, and upon an ascertainment of the balance discretionary judgment will be exercised anew."). "To outweigh these institutional interests in the deferral of review, any hardship caused by that deferral must be immediate and significant." *Am. Petrol. Inst.*, 683 F.3d at 389. Inconvenience on its own cannot outweigh the need for judicial economy. *See Landis*, 299 U.S. at 256 ("[T]he individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted."). On this score, regulatory uncertainty is an "insubstantial" hardship when the regulated party is "not required to engage in, or to refrain from, any conduct during the time the case is held in abeyance." *Devia v.*

*Nuclear Regul. Comm'n*, 492 F.3d 421, 427 (D.C. Cir. 2007) (cleaned up); *see also Nevada v. Dep't of Energy*, 457 F.3d 78, 86 (D.C. Cir. 2006) (hardship does not "flow from the uncertainty of the [agency's] implementation of the plan" where the plan "does not command anyone to do anything," "refrain from doing anything," or have any "adverse effects of a strictly legal kind" (cleaned up)).

The Plaintiffs cannot point to immediate and significant hardship. They argue that they are "currently undergoing formal Section 7 consultation under the ESA in the context of licensing of hydropower projects." Pls.' Opp'n at 12. And they are unconvinced that the Services will not apply the challenged regulation to them during the anticipated rulemaking. *See id.* ("The Services make the vague claim that they 'are highly unlikely to apply the regulation during remand in a way that Plaintiffs find concerning,' . . . but do not disclaim their authority to impose offsets and further outline a process by which they intend to exercise this authority." (quoting Mot. Voluntary Remand at 12)). But any such injury "will not occur until the [Services] make[] a concrete decision." *Nevada*, 457 F.3d at 86. So the Plaintiffs cannot claim in the meantime that they will "suffer any hardship from delaying review." *Id.* This is particularly true here, where the Services have represented that it is "extremely unlikely that [they] will use [their] discretion to incorporate reasonable and prudent measures that incorporate offsets" and that they "do[] not plan to use any reasonable and prudent measures that incorporate offsets without notifying the Federal action agencies and designated applicants to the consultation, as applicable." Damon-Randall Decl. ¶ 11, ECF No. 19-1; Shultz Decl. ¶ 11, ECF No. 19-2. Should the Plaintiffs have reason to believe that the challenged regulation will be applied against them, they may move to vacate the stay and seek expedited relief.

The Plaintiffs cite *American Waterways Operators v. Wheeler*, 427 F. Supp. 3d 95 (D.D.C. 2019), as an example of a court finding prejudice in part due to uncertainty surrounding compliance obligations. Pls.' Opp'n at 11–12; *see also Am. Waterways Operators*, 427 F. Supp. 3d at 100 ("A remand also will leave regulated parties uncertain as to their compliance obligations."). But such uncertainty was only one of a few reliance interests identified by the court. *See Am. Waterways Operators*, 427 F. Supp. at 99 (saying state regulatory scheme would be left "in limbo"); *id.* ("Remand might also imperil the significant environmental progress that has been made and is still anticipated in the Puget Sound."). That case also dealt with remand instead of abeyance, *see id.* at 98–100, and as the Court has explained, regulatory uncertainty is an "insubstantial" hardship when the regulated party is "not required to engage in, or to refrain from, any conduct during the time the case is held in abeyance," *Devia*, 492 F.3d at 427 (cleaned up).

## CONCLUSION

For the foregoing reasons, the Court grants in part the Defendants' Motion to Remand, ECF No. 19, and will hold the case in abeyance pending the anticipated rulemaking. The Defendants shall file a status report on its the anticipated rulemaking every sixty days.

A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:   June 2, 2025